Claude COWARD, et al.,
Plaintiffs-Appellants,

v.

COLGATE–PALMOLIVE CO., et al.,
Defendants-Appellees.

No. 81–1305.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 10, 1981.

Decided Aug. 16, 1982.

Rehearing and Rehearing En Banc
Denied Nov. 10, 1982.

John O. Moss, Moss & Walton, Indianapolis, Ind., for plaintiffs-appellants.

Matthew R. Westfall, Louisville, Ky., for defendants-appellees.

Before SWYGERT, Senior Circuit Judge, and CUDAHY and POSNER, Circuit Judges.

SWYGERT, Senior Circuit Judge.

Plaintiffs-appellants challenge the loss of past pension benefit credits claiming violation of the (1) Employees' Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1132, *et seq.*, (2) Securities Act of 1933, § 17(a), 15 U.S.C. § 77q(a), (3) Securities Exchange Act of 1934, § 10(b), 15 U.S.C. § 78j(b), and Rule 10b–5 of the Securities and Exchange Commission, and (4) the Military Selective Service Act, 50 U.S.C. App. § 459(b). Before analyzing the legal issues, we review the salient facts.

## I

This suit centers around an employee retirement pension plan. The original plan was funded through an annuity contract with the Equitable Life Assurance Society. Eligibility requirements as to employees' age and years of service were imposed for participation in the plan. These requirements were changed from time to time as a result of collective bargaining negotiations between Colgate-Palmolive Company and Local 15 of the International Chemical Workers Union. In 1971, these requirements were abolished and pension credits were recognized back to the date of hire for employees who had participated in the plan continuously since the time they were first eligible.

From its inception on December 31, 1943 until January 1, 1977, the pension plan was voluntary, requiring contributions from the participating employees and the company. The calculation of pension benefits was based on the amounts of contributions credited to an employee for the time he was a participant in the plan. In 1977, the plan became non-contributory and the company assumed the full financial responsibility for contributions to the plan. Coverage for pension benefits, however, was at all times based upon continuous service, excluding any period of nonparticipation while eligible or any period prior to withdrawal.

This action was instituted by plaintiffs to recover past pension benefit credits they were allegedly entitled to after the pension plan was amended to grant retroactive credits to employees who had participated continuously in the plan. Some of the plaintiffs seek to recover past pension benefit credits which the company contends were waived when the plaintiffs voluntarily withdrew from the plan. Another group of plaintiffs seeks to recover past pension

credits which the company asserts were lost, pursuant to the plan's provisions, when each of the plaintiffs lost his or her employee and seniority status as a result of an extended layoff. Plaintiffs appeal from the district court's order granting summary judgment for the company.

## II

ERISA was enacted by Congress to protect the pension rights of employees by establishing minimum standards for the regulation of private retirement plans. 29 U.S.C. § 1001 provides in pertinent part:

\*　　\*　　\*　　\*　　\*　　\*

(c) It is hereby ... declared to be the policy of this Act to protect ... the equitable character and the soundness of such plans by requiring them to vest the accrued benefits of employees with significant periods of service.

To effectuate this policy, Congress prescribed minimum vesting standards and limited the circumstances for which vested rights can be divested to: death of the employee; suspension of benefits upon particular types of reemployment; certain plan amendments approved by the Secretary of Labor; and the withdrawal of benefits derived from employee contributions. 29 U.S.C. § 1053(a)(3). *See Winer v. Edison Bros. Stores Pension Plan*, 593 F.2d 307, 311 (8th Cir. 1979).

### A

We consider first the claims of the thirty-nine plaintiffs who voluntarily withdrew from the plan. None of them had vested rights in the plan before their withdrawals. All withdrew prior to January 1, 1968, years before the enactment of ERISA, by signing waiver cards.[1] They thereupon received refunds equal to the amounts of their contributions to the plan. It is uncontroverted

---

1. Each of these plaintiffs signed a waiver card which set forth above their signature the following:

WAIVER CARD Cet. # . . . .

I HEREBY
CERTIFY THAT: Withdrew from plan at his request on . . . . . . , . . . . . . to obtain money for payment of debts.

I HAVE BEEN GIVEN AN OPPORTUNITY TO PARTICIPATE IN THE EMPLOYEE'S CONTRIB-

UTORY GROUP ANNUITY PLAN WITH THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES. THE BENEFITS OF THE PLAN HAVE BEEN THOROUGHLY EXPLAINED TO ME. I UNDERSTAND FULLY THE BENEFITS AVAILABLE TO ME UNDER THE PLAN AND I DECLINE TO PARTICIPATE.

that, in every case, before plaintiffs withdrew from the plan, an official at Colgate-Palmolive read the waiver card to each of them, explained what they were forfeiting before they signed the cards in his presence, and wrote a note describing each withdrawal which was typed on the back of each waiver card. After withdrawal from the plan, plaintiffs at various times reenrolled, but calculation of future pension benefits was based on future service only.

 Plaintiffs attempt to bring the issue of the sufficiency and extent of their waivers under the provisions of ERISA by arguing that their cause of action arose in 1976, after ERISA was enacted, when they discovered that the company was denying them their past pension benefit credits. ERISA expressly provides that, as to plaintiffs' claims under 29 U.S.C. § 1132, its preemption of state laws relating to any employee pension benefit plan "shall not apply with respect to any cause of action which arose, *or any act or omission* which occurred, before January 1, 1975."[2] 29 U.S.C. § 1144(b)(1) (emphasis added). A party cannot rely on pre-ERISA conduct to escape application of ERISA if the critical acts serving as the basis for the claim occurred after ERISA went into effect. *Winer, supra.* Similarly, plaintiffs cannot rely on the fact that they allegedly discovered

the effect of their waivers after ERISA, if the critical acts constituting their effective waivers occurred before ERISA came into effect. We do not need to decide whether plaintiffs' cause of action arose at the time plaintiffs contend they became aware of the effect of their waivers because we find that plaintiffs' actions in signing the waiver cards and accepting amounts equivalent to their contributions to the plan constitute "act[s] . . . which occurred, before January 1, 1975" within the meaning of 29 U.S.C. § 1144(b)(1).[3] *Bacon v. Wong*, 445 F.Supp. 1189, 1192 (N.D.Ca.1978).

The critical question is whether plaintiffs' conduct at the time of the alleged waiver was voluntary, intelligible, and meaningful so as to constitute an effective waiver.[4] If, in fact, the waivers of pension benefit credits were ineffective, then ERISA applies not because plaintiffs became aware of the consequences of their pre-ERISA conduct after ERISA's effective date, but because the pension credits were not effectively waived prior to the time that ERISA came into force.

A careful examination of the record satisfies us that the district court was correct in concluding that plaintiffs' conduct in signing the waiver cards, and accepting amounts equivalent to their contributions to the plan, constituted effective waivers of

---

**2.** 29 U.S.C. § 1132(a)(1)(B) provides:
(a) A civil action may be brought . . .
(c) by a participant or beneficiary . . .
\* \* \* \* \* \*
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.
29 U.S.C. § 1144 provides in pertinent part:
(a) Except as provided in subsection (b) of this Section, the provision of this subchapter [subchapter 1, sections 1001 through 1144, which includes the civil enforcement provisions under which appellants proceeded in the district court] . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . .
(b)(1) The section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975.

**3.** "The phrase 'act or omission' has been said to 'refer to those significant facts which give rise to a claim but which fall short of establishing a

cause of action,' *Winer v. Edison Brothers Stores Pension Plan*, 593 F.2d 307, 313 (8th Cir. 1979). . . . The clear practical import of the act or omission clause is to prevent past conduct of pension plan fiduciaries and contributors from being judged retroactively under the standards established by ERISA simply because the conduct generates consequences subsequent to the ERISA effective date that give rise to what is, technically, an independent 'cause of action'." *Quinn v. Country Club Soda Co.*, 639 F.2d 838, 840–841 (1st Cir. 1981).

**4.** *City of Evansville v. Follis*, 161 Ind.App. 396, 315 N.E.2d 724, 728 (1974); *Conner v. Fisher*, 136 Ind.App. 511, 202 N.E.2d 572, 575 (1964); *Shearson Hayden Stone, Inc. v. Leach*, 583 F.2d 367, 370 (7th Cir. 1978). While the finding of a "waiver" depends on applicable state law, the question of whether a "waiver" is an "act" within 29 U.S.C. § 1144(b)(1) is one of federal law. *Cf.* Part B where we discuss why actions constituting termination from employment are not "acts" within 29 U.S.C. § 1144(b)(1).

their pension benefit credits. We reject plaintiffs' contention that the company's continuous act of denying them pension benefit credits is a continuing breach of duty which brings their claim within the ambit of ERISA, since this construction would in effect read the exception of section 1144(b)(1) out of the statute. *Martin v. Bankers Trust Co.*, 565 F.2d 1276, 1278–79 (4th Cir. 1977). We hold that plaintiffs cannot assert jurisdiction under ERISA as to their claim pertaining to pension credits that they waived prior to ERISA's effective date.

Because the district court did not have jurisdiction over the claims of the thirty-nine plaintiffs who withdrew from the plan, the court should not have granted summary judgment for defendants. Although, as the First Circuit has noted, "disposition of cases such as this one fall[s] within a 'gray area' where dismissal might be termed either 'jurisdictional' or 'on the merits,'" *Quinn*, 639 F.2d at 841 n.3, we believe that it is the better practice to dismiss cases such as this one rather than dispose of them on motions for summary judgment. We therefore vacate the judgment of the district court as to the thirty-nine plaintiffs and remand the case with instructions to dismiss the complaint for lack of jurisdiction.

**B**

■ Fourteen plaintiffs contend that they are entitled to pension credits for the periods of time prior to their layoff. Any employee who was laid off for longer than twelve months lost his status as a Colgate-Palmolive employee. A notice of discontinuance from the plan was prepared, and the employee had the option of receiving the amount of his contributions or remaining in the plan and receiving benefits in the form of an annuity based on the employee's contributions. All the plaintiffs in this case who were laid off elected the first alternative.

The company does not contradict plaintiffs' assertion that their application for pension credits was denied in 1976, subsequent to ERISA's effective date. The company contends, however, that this court lacks subject-matter jurisdiction because the events in question occurred prior to ERISA's effective date. We disagree.

The company argues that the critical "act" for purposes of ERISA, 29 U.S.C. § 1144, was the employees' termination from the plan as a result of their extended layoffs. We reject this analysis because it would place too heavy a burden on employees who participated in pension plans by requiring them to know what the plan provided in the event of an extended layoff or risk losing their cause of action. *See Winer*, 593 F.2d at 312. We believe that such a result is inconsistent with the purposes of ERISA. "Congress could not have meant that if *any* act or omission relevant to the cause of action occurred prior to January 1, 1975, state law would control. Such an interpretation would be inimical to the Congressional attempt to extend the protections of ERISA as soon as practicable." *Id.* at 313. We hold that the critical act for purposes of ERISA was not the layoffs, but was the denial of plaintiffs' applications for pension benefit credits; therefore, we have jurisdiction of the claims of those employees who lost their pension credits as a result of layoffs.

■ On the merits, decisions in *Bowe v. Colgate-Palmolive*, 489 F.2d 896 (7th Cir. 1973); *Stevens v. Colgate-Palmolive*, 549 F.2d 804 (7th Cir. 1977) (unpublished order), involving the same parties to the claim under review, are *res judicata* as to the issue of the effect of plaintiffs' extended layoffs on their pension benefit credits. Plaintiffs argue that this court's two previous decisions dealt with plaintiffs' seniority, while the present claim deals with pension benefit credits. The *res judicata* effect of the previous cases does not depend on the label placed by the parties on the cause of action. The essential fact is that the pension benefit credits claimed by plaintiffs in the instant case are calculated by determining the length of employment, *i.e.*, seniority, which we expressly and conclusively determined in the two previous cases.[5] Since our previous holdings and the relief granted in

5. In the two previous cases, these same plain-

tiffs requested that they be granted "the accu-

the previous cases are *res judicata* on the merits of plaintiffs' entitlement to pension benefit credits for the period of employment prior to their layoffs, plaintiffs may not relitigate this claim. Therefore, the district court properly granted summary judgment against this group of plaintiffs.

**C**

Plaintiffs who waived their benefit credits and those who lost their credit as a result of extended layoffs now claim that they are entitled to retroactive benefit credits based on amendments to the retirement plan which came into effect on January 1, 1977. Plaintiffs argue that the amendments provided that the number of years service used in computing retirement benefits was to be determined by calculating from the date of hire of each participant, without reference to the terms and conditions of the retirement income plan which was in effect on the date of hire of such employee.

Plaintiffs' claim sufficiently asserts this court's subject-matter jurisdiction under ERISA. "Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which [appellants] could actually recover." *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).

Although amendments to a pension plan can explicitly provide for the retroactive application of favorable terms for individuals who had ceased their employment, *see Tucci v. Edgewood Country Club*, 459 F.Supp. 940 (W.D.Penn.1978), or who had previously lost credited service, we do not believe that the provisions of the amended plan at issue in this case support such a

construction. The plan has always provided that any period prior to withdrawal is not recognized in calculating pension benefit credits. In 1974, amendments to the plan granted retroactive credit to the date of hire *only* to those employees who had been continuous participants in the plan from the date of their eligibility. Plaintiffs, by relinquishing their rights to participate and then later rejoining the plan, were limited by the plan's express terms to credit from the date of their rejoining the plan.[6] Article X–111–¶8 of the 1977 plan supports the conclusion that the amendments were not intended to provide plaintiffs with retroactive benefit credits. That provision states that

[f]or a Member who will have his service connected under Section 4 of this Article [dealing with break in service for the purpose of vesting] and who withdrew the Benefit Attributed to the Member's Contributions to the Plan as outlined in Section 1(a), he may upon subsequent reemployment and enrollment in the plan buy back the amount of such accrued benefit attributed to his contributions to the plan. In order to buy back the Benefit Attributed to the Member's Contributions a Member must return to the Plan the amount withdrawn plus interest . . . .

Plaintiffs have not presented evidence to raise a genuine issue of fact as to the sole material issue of the proper interpretation of the terms of the amendments to the plan. Consequently, the grant of summary judgment was proper on the claim for retroactive benefit credits.

**III**

Plaintiffs' claim of violations of the Securities Acts relates solely to the contributo-

---

mulated back seniority they have lost, with all benefits, including but not limited to, back pay, increase in remuneration, vacation rights, sick leave *and pension rights* to which they would have been entitled had they not been wrongfully classified, denied recall or laid off on the basis of sex." *Stevens, supra*, at p. 2 (emphasis added).

6. Section 203(b)(1)(F) of ERISA provides that: "(b)(1) In computing the period of Service under the plan for purposes of determining the nonforfeitable percentage under subsec-

tion (a)(2) of this section, all of an employee's years of service with the employer or employers maintaining the plan shall be taken into account, except that the following may be disregarded:

\* \* \* \* \* \*

(F) Years of service before this part first applies to the plan [September 2, 1974] if such service would have been disregarded under the rules of the plan with regard to breaks in service, as in effect on the applicable date."

ry-voluntary pension plan in existence prior to January 1, 1977, because as to the non-contributory, compulsory pension plan in existence since 1977, it is clear that the Securities Acts do not apply. *International Brotherhood of Teamsters v. Daniel*, 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979).

Plaintiffs' complaint alleges that the company violated the Securities Act of 1933, 15 U.S.C. § 77q(a), the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 (17 C.F.R. § 240.10(b)–5). In the complaint, plaintiffs assert that the defendants "never disclosed to plaintiffs, facts from which a reasonable person could infer the actual probability that plaintiffs would not, in fact, receive retirement income benefits from the Plan; the defendants never disclosed facts to the plaintiffs from which plaintiffs could intelligently appraise the risk that they were undertaking of ever receiving retirement income benefits in the future. [And] defendants have not, including the various times at which the Plan was offered to the several plaintiffs, disclosed to plaintiffs and each of them, the circumstances under which the plaintiffs could be deprived of retirement income benefits under the Plan." The district court granted summary judgment, finding that there was no genuine issue of fact as to the alleged fraud, "in view of the extensive efforts of Colgate through its supervisors to persuade each and every employee to maintain their participation in the plan rather than exercise an option to withdraw and receive back their cash contributions."

▊ The parties disagree about whether plaintiffs had pleaded the necessary elements of scienter and specification of fraud. We do not reach this question, because we believe that the quintessential defect in appellants' claim of a violation of the Securities Acts lies in the fact that the pension plan at issue in this case does not constitute a security within the meaning of the Securi-

ties Acts. Section 2(1) of the Securities Act of 1933, *as amended*, 15 U.S.C. § 77b(1), defines a "security" as "any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, *investment contract*, voting-trust certificate, certificate of deposit for a security, fractional individual interest in oil, gas, or other mineral rights, or in general, any interest or instrument commonly known as a 'security,' or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing." [7] (emphasis added). The only term in this definition of "security" that could arguably characterize an interest in the pension plan is "investment contract." The Supreme Court has expressly stated that "[t]o determine whether a particular financial relationship constitutes an investment contract, '[t]he test is whether the scheme involves an investment of money in a common enterprise with [reasonable expectation of] profits to come solely from the efforts of others.' *SEC v. Howey*, 328 U.S. 293 at 301, 66 S.Ct. 1100 at 1104, 90 L.Ed. 1244. This test is to be applied in light of 'the substance—the economic realities of the transaction—rather than the names that may have been employed by the parties.' *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 851–852, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621 (1975)." *Daniel*, 439 U.S. at 558, 99 S.Ct. at 795.

Applying the Supreme Court's test to Colgate-Palmolive's pension plan leads us to conclude that it cannot be considered a "security" as that word is defined in the Acts. The plan provides that the retirement benefits to which a participant is entitled substantially exceed his contributions and are not dependent on any profits that might be generated by the investment of the plan's funds.[8] The guarantee of fixed income

---

**7.** The definition of a "security" in section 3(a)(10) of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10), is virtually identical and, for the purposes of this case, the coverage of the two Acts may be regarded as the same.

*See Daniel*, 439 U.S. at 556 n.7, 99 S.Ct. at 795 n.7.

**8.** Although there were minor variations in the percentages and years used, as a result of the various amendments to the plan, participants

places all the investment risk on the insurer, with no substantial risk to the annuitants. *See SEC v. Variable Ann. Ins.,* 359 U.S. 65, 71, 79 S.Ct. 618, 621, 3 L.Ed.2d 640 (1959). After examining the economic substance of plaintiffs' interest in the pension fund, we conclude that there is no real risk to the capital representing the participants' contributions as to make plaintiffs, in any meaningful sense, "sharer[s] in the investment experience" of the enterprise. *Id.* at 77, 79 S.Ct. at 625. A large portion of the fund's income comes from the employer's contributions, "a source in no way dependent on the efforts of the Fund's managers." *Daniel,* 439 U.S. at 562, 99 S.Ct. at 797. The "risk" of the possible insolvency of the enterprise and of the soundness of the plan is not an investment risk. The principal barrier to an individual employee's realization of pension benefits is his own ability to meet the fund's vesting requirements rather than the pension fund's investment success. *Id.*

The Colgate-Palmolive employees who participated in the plan were interested in acquiring an insurance-type retirement benefit, rather than making an investment for profit. There was no expectation of "profits" from the investment of their contributions, nor was the amount of benefits tied to the success or failure of the investments of the pension's funds. Plaintiffs' interest in the pension plan does not represent any of the " 'countless and variable schemes devised by those who seek the use of money of others on the promise of profits,' ... and therefore do not fall within the 'ordinary concept of a security.' " *United Housing*

*Foundation v. Forman,* 421 U.S. 837, 848, 95 S.Ct. 2051, 2058, 44 L.Ed.2d 621 (1975), *quoting SEC v. Howey,* 328 U.S. 293, 299, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946). We conclude that "the type of pension plan at issue in this case bears no resemblance to the kind of financial interests the Securities Acts were designed to regulate." [9] *Daniel,* 439 U.S. at 566, 99 S.Ct. at 800.

### IV

The district court properly granted defendants summary judgment on the claim that the Military Selective Service Act, 50 U.S.C.App. § 459(b), was violated, since plaintiffs did not present evidence sufficient to dispute the company's showing that none of the former servicemen lost pension benefit credits as a result of time spent in the armed services.

The order of the district court is vacated as to the thirty-nine plaintiffs who withdrew from the plan and remanded with directions to dismiss. As to the fourteen plaintiffs who were laid off, the order granting summary judgment is affirmed.

---

in the plan were guaranteed retirement benefits based on the following formula:

1.1% × average of high consecutive recognized earnings in final 10 years × all continuous service [defined to mean contributions during continuous participation in the plan] from date of employment as determined by the company, plus 0.4% × average of high five consecutive recognized earnings in final 10 years × continuous credited service [continuous participation in the plan] after age 25 less a maximum of 50% of Primary Social Security calculated at 1.5% per year of credited service after age 25.

Defendants' exhibit 18 at p. 2.

**9.** Our holding does not foreclose application to pension plans such as the plan at issue in this case of the anti-fraud provisions of state regulations of annuities.