**George L. GOVONI, Plaintiff,**

v.

**BRICKLAYERS, MASONS AND PLASTERERS INTERNATIONAL UNION OF AMERICA, LOCAL NO. 5 PENSION FUND and Plymouth-Home National Bank, Defendants.**

Civ. A. No. 80–627–G.

United States District Court,
D. Massachusetts.

Oct. 19, 1983.

Arthur J. Flamm, Flamm, Kaplan, Paven & Feinberg, Boston, Mass., for BMPIU, Local No. 5 Pension Fund.

James T. Grady, Grady & McDonald, Boston, Mass., for plaintiff.

## MEMORANDUM AND SUMMARY JUDGMENT FOR DEFENDANTS

GARRITY, District Judge.

George Govoni commenced this action against the Bricklayers, Masons and Plasterers International Union of America, Local No. 5 Pension Fund ("the Fund") alleging that the partial denial of his pension application by the Fund's Board of Trustees ("the Trustees") was arbitrary and capricious, and that it violated § 203 of the Employee Retirement Security Act of

1974 (ERISA), 29 U.S.C. § 1053. At issue is the Trustees' determination that plaintiff Govoni forfeited more than one-half of his pension credits when he incurred a "break in service" in 1965. Govoni claims that under the pension plan rules in effect when he filed his application in 1979 he did not incur a "break in service." The defendant Trustees respond that the rules on which plaintiff relies went into effect in 1976 and do not apply retroactively. They claim that plaintiff's break in service is established by the rules in effect in 1965, when the purported break occurred. The action is presently before the court on cross motions for summary judgment. Briefs were filed and the court heard oral argument.

## I.

The material facts are not in dispute. The pension plan went into effect on June 1, 1962. In recognition of employment prior to that date, the plan awarded credit to employees for every year of union membership before 1962. The pre-1962 credits were designated "past service credits" to distinguish credits earned after the implementation of the plan, which were designated "future service credits" and based on hours worked.

Plaintiff Govoni, a union member since 1951, was awarded eleven years of past service credit when the plan went into effect on June 1, 1962. Shortly before that date, however, in March 1962, plaintiff ceased working as an employee covered by the pension plan and began working as a masonry contractor. He continued in business as a contractor until October, 1966 when he resumed working as an employee covered by the pension plan. Plaintiff continued working in covered employment until 1979 when he retired and filed his pension application. The defendants awarded him 10.3 future service credits based on his hours worked during the period from 1966 through 1979; he is currently receiving pension benefits based on that award. The defendants denied plaintiff's claim for past service credit, however, determining that he had forfeited his eleven years of past

service credit by virtue of a break in service he incurred on May 31, 1965.

The defendant Trustees' decision was based upon their application of the break in service rule contained in the original 1962 pension plan, which was in effect at the time of the purported break. The 1962 rule reads as follows, in pertinent part:

"Break in Service" shall mean a break in the continuity of an Employee's employment in the trade on or after June 1, 1962, and shall be deemed to have occurred if an Employee fails to accrue at least one-half year of Credited Future Service in any period of three consecutive plan years....

Since plaintiff had failed to accrue at least one-half year of Credited Future Service in the three year period beginning June 1, 1962, the defendants determined that he had incurred a break in service on May 31, 1965.

Plaintiff claims that the defendants wrongfully applied the break in service rule from the 1962 pension plan. He contends that the 1976 plan, which was in effect at the time of his application in 1979, is controlling. The 1976 rule provides in pertinent part:

"Break in Service" shall mean a break in the continuity of an Employee's employment in the trade on or after June 1, 1962, and shall be deemed to have occurred if the conditions of both (a) and (b), below occur ...

(a) An Employee fails to accrue at least one-half ($\frac{1}{2}$) of a Vesting Credit in any period of three (3) consecutive Plan Years,

(b) Commencing August 1, 1976, an employee does not earn at least four-tenths ($\frac{4}{10}$ths) of a Vesting Credit in a Plan Year and the number of such consecutive Plan Years exceeds his total Vesting Credit.

Subsection (a) of the 1976 rule essentially incorporates the 1962 rule. Subsection (b) incorporates the so-called "rule of parity" mandated by § 203(b)(3)(D) of ERISA, 29 U.S.C. § 1053(b)(3)(D). It provides that no employee shall suffer a break in service

unless the number of consecutive years the employee absented himself from covered employment exceeds the number of years of service credited to him before he left covered employment. For example, an employee with six years of service credit would have to absent himself for over six consecutive years before all service credit earned prior to the break would be forfeited.

Plaintiff Govoni argues that under the 1976 rule he did not suffer a break in service in 1965 since, "commencing August 1, 1976", i.e., subsequent to August 1, 1976, he did not violate the rule of parity.

## II.

■ In support of his position that the 1976 plan rather than the 1962 plan is controlling, plaintiff cites *Snyder v. Titus,* E.D.Va.1981, 513 F.Supp. 926. That case adopts the following rule of construction in pension claim cases: the version of the plan in effect at the time an employee's application is filed or is ruled upon is controlling in determining entitlements. 513 F.Supp. at 931. The court agrees that this is the only logical rule. A contrary one would frustrate the intent of the parties whenever a union and an employer desired to give retroactive effect to any plan amendment. The *Snyder* rule, on the other hand, allows the union and the employer to choose whether or not a given amendment will be retroactive, subject to the substantive provisions of ERISA.[1] Because the *Snyder* rule of construction protects the intent of the parties, see *Emery v. Crowley,* 1976, 371 Mass. 489, 359 N.E.2d 1256, the court adopts it here.

## III.

Under this rule of construction, the court's inquiry is twofold. First, the court must decide whether a rational and good faith interpretation of the 1976 plan supports the Trustees' application of the 1962 rule to Govoni's purported break in service.

See *Snyder v. Titus, supra* at 932 (citing cases). Under this test it is not for the court to substitute its judgment for that of the Trustees, nor is it the function of the court to choose between several reasonable interpretations of a plan. The court is simply to determine whether the Trustees have acted in a rational and reasonable manner.

The court's second inquiry is whether the Trustees' interpretation is in compliance with the substantive provisions of ERISA, namely, the provisions regarding participation and vesting.

### A.

■ We begin our discussion of the rationality of the Trustees' interpretation of the 1976 plan by noting that the break in service rule contains a major ambiguity. The first paragraph of the rule states that a "break in service" may occur "on or after June 1, 1962" provided that the conditions of both subparagraphs (a) and (b) are satisfied. Subparagraph (b), however, sets out a condition that cannot be satisfied until on or after August 1, 1976. One construction of the rule, therefore, is that a break in service cannot occur until on or after August 1, 1976. Plaintiff argues for this construction. The problem with this construction is that it fails to give meaning to the phrase "on or after June 1, 1962" in the rule's first paragraph, which presumably defines when a break in service can occur. Such a construction violates the well-settled principle that each term of a contract is to be given meaning where possible. *Gillentine v. McKeand,* 1 Cir.1970, 426 F.2d 717; *Winchell v. Plywood Corp.,* 1949, 324 Mass. 171, 85 N.E.2d 313; *King Features Syndicate v. Cape Cod Broadcasting,* 1945, 317 Mass. 652, 59 N.E.2d 481; *see generally Williston on Contracts,* § 619 n. 3. Under plaintiff's construction of the plan, every employee who violated the break in service rule in effect prior to August 1, 1976, but who filed for a pension after that date, would have his

---

1. Other labor laws, such as the Labor Management Relations Act, 29 U.S.C. § 186, as well as considerations of fairness, *Snyder v. Titus, su-* *pra,* at 931 (citing cases), may also constrain a decision to apply a pension plan amendment retroactively.

pension credits automatically reinstated, unless he also violated the rule of parity subsequent to August 1, 1976.[2] Although amendments to a pension plan can explicitly provide for the restoration of previously forfeited credits, *Coward v. Colgate Palmolive Co.*, 7 Cir.1982, 686 F.2d 1230, 1235, we do not believe that the provisions of the plan at issue in this case support such a result.

An alternative construction, the one urged by the defendants, treats the phrase "commencing August 1, 1976" as the effective date of subsection (b). Under this construction, a break in service prior to that date can occur upon satisfaction of subsection (a) alone. The problem with this position is that it seems at odds with the language of the first paragraph, which requires that *both* subsections (a) and (b) be satisfied before a break "shall be deemed to have occurred."

■ Nevertheless, the reasonableness of the Trustees' interpretation is supported by three factors set forth in the affidavit of Charles R. Austin, the actuary who has serviced the pension fund in question since 1977 and who drafted the 1976 break-in-service rule. First, the Trustees incorporated the rule of parity in subsection (b) for the sole purpose of complying with ERISA and intended that the rule have prospective effect only. Breaks in service occurring before August 1, 1976 were to be governed by the 1962 break in service rule incorporated in subparagraph (a). Second, the Trustees have applied the 1962 rule in a consistent and uniform manner. Any participant who did not earn at least one-half of a pension credit in any period of three consecutive years between June 1, 1962 and August 1, 1976, and who did not qualify for additional grace periods, was deemed to have had a break in service. Thirty-five employees had a break in service during that period. Such a consistent pattern of interpretation is an indicium of rationality.

*Gordon v. ILWU–PMA Benefit Funds*, 9 Cir.1980, 616 F.2d 433, 440. Finally, the break in service rule on which the Trustees relied in Govoni's case was in effect continuously from June 1, 1962 until August 1, 1976. During this period, publications describing the break rule were distributed to the participants. Plaintiff knew or should have known about the rule when he resumed covered employment in 1966. This is not a case, in other words, where the employee had no notice of the break in service rule. *See*, e.g., *Burroughs v. Board of Trustees*, 9 Cir.1976, 542 F.2d 1128, *cert. den.*, 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543.

In light of these circumstances, the Trustees' interpretation of the 1976 rule was not arbitrary and capricious.

**B.**

■ The court's inquiry now turns to whether the Trustees' interpretation of the plan complies with the requirements of ERISA.

Plaintiff does not argue that the rule of parity must be applied retroactively to his pre-ERISA break in service. Indeed, it appears well settled that § 203(b)(1)(F) of ERISA, 29 U.S.C. § 1053(b)(1)(F), expressly authorizes prospective application of the rule. *Coward v. Colgate-Palmolive Co.*, *supra* at 1235; *Woodfork v. Marine Cooks & Stewards Union*, 5 Cir.1981, 642 F.2d 966, 972; *Dudo v. Schaffer*, E.D.Pa.1982, 551 F.Supp. 1330, 1339; *Snyder v. Titus*, *supra* at 937. As the court pointed out in *Dudo v. Schaffer*, *supra*, Congress apparently reasoned that the financial burden imposed by ERISA's minimum vesting standards were substantial enough without requiring plan administrators to restore the service credit of employees who previously suffered breaks in service. Thus, § 1053(b)(1)(F) permits pension plans to adopt a dual break in service scheme: the rule of parity need only apply to breaks

---

**2.** Under plaintiff's analysis it seems that he could not incur a break in service until 1990, when the number of consecutive years away from covered employment subsequent to August

1, 1976 (i.e., 11 years after his retirement in 1979) would exceed his total vesting credit (i.e., 10.3 future service credits awarded by the Trustees).

occurring after the effective date of the ERISA plan; the old rules may apply to breaks occurring before that date.

■ Plaintiff argues that the 1976 pension plan that controlled his application did not expressly adopt such a dual break in service scheme. He cites *Snyder v. Titus, supra,* for the proposition that § 1053(b)(1)(F) requires an express statement in the plan in effect when an employee applies for a pension that a break in service in years prior to the effective date of ERISA shall be governed by the rule in effect at the time of the alleged break.

In *Snyder,* the trustees applied a 1959 break in service rule to an employee's 1978 pension claim. The 1959 rule covered breaks in service for the years prior to 1959. None of the subsequent revisions of the plan contained any reference to pre-1959 breaks in service, however. Under the revised rules, breaks in service could not occur prior to June 30, 1961. The Trustees argued that since these later versions of the plan did not mention pre-1959 breaks in service, there was a rational basis for their decision to look to the 1959 plan for determining the existence of such breaks. The court in *Snyder* stated that § 1053(b)(1)(F) did not allow the trustees to posit that a gap exists in the current plan with respect to pre-1959 breaks and then fill the gap by an interpretation harkening back to a pre-ERISA plan.[3] In the absence of a clear statement that an old break rule will apply to breaks occurring before the effective date of ERISA, the *Snyder* court held it was arbitrary and capricious for the trustees not to apply the rule of parity to the applicant's claim.

We believe that the pension plan in this case survives the *Snyder* analysis for two reasons. First, the 1962 break rule that the Trustees applied here was incorporated in every subsequent revision of the pension plan, including the ERISA version. Thus, this is not a case of the Trustees "dig[ging]

up rules from old and discarded plans." *Snyder, supra* at 937. Secondly, the trustees are not inferring the applicability of the old rule from a "gap" or "omission" in the current plan. They are instead relying on the express terms of the current plan, which provide that the rule of parity applies only to breaks in service after August 1, 1976. It is true, as we noted earlier, that the current rule is not free from ambiguity. However, in our opinion it is sufficiently explicit to satisfy the requirements of § 1053(b)(1)(F).

### IV.

In summary, in light of (1) the ambiguous language of the rule, (2) the avowed intent of the drafters, (3) the Trustees' uniform and consistent interpretation of the rule, and (4) the notice given to the plaintiff regarding the rule, the court finds that the Trustees' application of the 1962 break-in-service rule to the plaintiff was not arbitrary and capricious. Furthermore, the court finds that the application of the 1962 rule does not violate § 203(b)(1)(F) of ERISA. Accordingly defendant's motion for summary judgment is granted and plaintiff's motion for summary judgment is denied.

---

**3.** At one point the *Snyder* court seems to suggest that § 1053(b)(1)(F) authorizes a post-ERISA plan to incorporate only the break in service rule in effect at the time ERISA became law, *Snyder, supra* at 937, n. 12, rather than the rule in effect at the time any particular break occurred. We need not address that issue here, for the old break rule relied upon by the Trustees was in effect both when the break occurred in 1965 and when ERISA became law in 1976.