[613 NYS2d 996]

Peter Greco et al., Respondents, v International Hodcarriers, Building and Common Laborers' Union Local 17 Pension Fund, Appellant.

Third Department, June 30, 1994

APPEARANCES OF COUNSEL

*Rider, Weiner, Frankel & Calhelha, P. C.,* Newburgh *(Michael J. Matsler* and *Moacyr R. Calhelha* of counsel), for appellant.

*Dewey Ballantine,* New York City *(Kevin E. Maldonado* of counsel), for respondents.

### OPINION OF THE COURT

YESAWICH JR., J.

In 1965, the International Hodcarriers, Building and Common Laborers' Union (hereinafter the Union), of which plaintiff Peter Greco (hereinafter Greco) was a member, established defendant, a pension fund created for the purpose of providing retirement benefits for its members. At that time, Greco's employment was subject to the terms of a collective bargaining agreement under which the Union made contributions to defendant on his behalf. This continued until mid-1974, when Greco's employer terminated its Union contract. Thereafter, no further contributions were made to defendant on Greco's

behalf until 1979, when he again obtained covered employment, which he pursued until 1987. In 1992, at age 65, Greco retired.

The rules and regulations governing accrual and payment of benefits from defendant (hereinafter the plan) originally provided for only a normal retirement pension and an early retirement pension, both of which were payable on the basis of a member's total "credited service" at the time of retirement. If, however, the employee at any time experienced a period of two consecutive years in which employer contributions fell below a certain level, all prior "credited service" would be lost, except in certain specified circumstances not relevant to this appeal. In 1969, the plan was amended to add a "deferred vested pension", which permitted those members who had accumulated 15 years of credited service (at least 10 years of which were earned since the establishment of the fund in 1965) to receive benefits upon reaching retirement age, regardless of any breaks in service that occurred after they had become "vested". In 1973, the article in the plan governing accrual of credited service was changed to allow the accumulation of additional "bonus" credits by employees who worked 200 or more hours above the minimum necessary to obtain a full year of "base credit" for the plan year, and in 1975 the provision establishing the "deferred vested pension" was modified to provide that only "base credited service"—but not "bonus credits"—would be considered in determining whether a member was "vested" under that provision.

In 1976, in response to the enactment of the Federal Employee Retirement Income Security Act (29 USC § 1001 *et seq.;* hereinafter ERISA), which was first effective with respect to defendant on October 1, 1976, a new plan was adopted, and in 1986 the plan was again restated to encompass further changes. Both post-ERISA plans provided, as permitted by ERISA *(see,* 29 USC § 1053 [b] [1] [F]), that any credited service that had been lost due to the operation of a "break in service" provision under a prior plan would not be reinstated.

Upon retirement, Greco applied for pension benefits and was informed by defendant's manager that he would receive a normal retirement pension of $290 per month, but that he did not qualify for the "deferred vested pension"—which would have provided greater benefits—due to his break in service from 1974 to 1979, by virtue of which he had forfeited all of his previously earned credits. After a hearing, defendant's trustees concurred in the manager's assessment, prompting

Greco and his wife to bring this action, sounding in breach of contract, violation of the provisions of ERISA, breach of fiduciary duty, negligence and intentional infliction of emotional distress. Defendant answered and then moved for summary judgment, contending that plaintiffs' State and common-law claims are preempted by ERISA, and thus must be dismissed, and that inasmuch as the trustees' interpretation of the plan provisions was rational, it should not be overturned. Plaintiffs cross-moved for permission to amend the complaint to add defendant's trustees as individual defendants.

Finding that the critical acts or omissions giving rise to plaintiffs' claims occurred prior to the effective date of ERISA, Supreme Court held that State law governed the dispute. Defendant's motion to dismiss the complaint, predicated as it is on preemption grounds and lack of jurisdiction, was accordingly denied. Moreover, after searching the record, the court found that Greco was entitled to a deferred vested pension and granted plaintiffs judgment on that issue, as well as on their cross motion. Defendant appeals.*

■ ERISA preempts all State common-law claims based on denial of pension benefits, except those claims which accrue, or are based on acts or omissions that occurred, prior to January 1, 1975 (see, 29 USC § 1144 [a], [b]). Here, Greco's claims did not accrue until he was denied benefits in 1992 (see, e.g., Menhorn v Firestone Tire & Rubber Co., 738 F2d 1496, 1501); New York law is accordingly inapplicable to those claims unless they arise from acts which transpired prior to January 1, 1975. If the decision of the trustees was a mere formality, and was "completely dictated by the pre-1975 events", then ERISA does not preempt State law review of that decision (Stevens v Employer-Teamsters Joint Council No. 84 Pension Fund, 979 F2d 444, 452), but if it was not inevitable that plaintiff would be denied benefits—that is, if the decision to deny benefits was discretionary or the plan was ambiguous and subject to interpretation—then the relevant act is the denial of benefits itself (see, Menhorn v Firestone Tire & Rubber Co., supra, at 1502-1503; Paris v Profit Sharing

---

* On reargument, and after this appeal was perfected, Supreme Court granted defendant's motion to dismiss the cause of action sounding in intentional infliction of emotional distress, and also dismissed all claims made on behalf of plaintiff Ruth Greco, who, having signed a waiver of spousal pension rights, was found not to have standing to assert claims based on her husband's pension. As a consequence, these issues are not being addressed.

*Plan for Empls. of Wolf,* 637 F2d 357, 360-361, *cert denied* 454 US 836; *cf., Lamontagne v Pension Plan of United Wire, Metal & Mach. Pension Fund,* 869 F2d 153, 156-157, *cert denied* 493 US 818). To determine whether State law has been preempted by ERISA, it is necessary to assess the exact nature of the controversy, and the events which underlie both parties' assertions.

Defendant maintains that because Greco was not vested at the time he would first have been considered to have suffered a "break in service", that is, on September 30, 1976, after two plan years had passed in which he accumulated less than the minimum required credited service of 400 hours annually, he was terminated from the plan at that time and began accruing credits anew when he resumed covered employment in 1979. Defendant's conclusion that Greco had not become vested stems from its interpretation of the plan in effect in 1974 which assertedly created a distinction for purposes of vesting between "base" credits and "bonus" credits. Alternatively, defendant urges that the 1975 amendment, which explicitly made that distinction, should be retroactively applied to Greco because he did not terminate from the plan until after this amendment had been adopted.

Greco, on the other hand, claims that the plan, as it stood in 1974, included within the definition of "credited service" both "base" and "bonus" credits and, inasmuch as he had accumulated enough credited service to qualify for a "deferred vested pension" before his termination from covered employment in June 1974, whether it began then or two plan years later in 1976, he is entitled to the benefits of a deferred vested pension. He also argues that it would be improper to apply the 1975 amendment retroactively to divest him of the rights which he had already acquired.

It cannot be said, after a careful reading of the plan in effect on June 8, 1974, that the denial of Greco's deferred vested pension benefits inexorably followed from the provisions of the plan, or that the trustees' conclusion that Greco had not attained vested status was completely dictated by Greco's actions and the plan provisions in effect prior to 1975. The acts triggering Greco's claims of breach of contract were the adoption of the amendment in December 1975 which provided that bonus credits were not to be considered for vesting purposes, retroactive application of that amendment to Greco and the trustees' interpretation of the 1974 plan documents, all of which occurred after January 1, 1975 *(see,*

*Menhorn v Firestone Tire & Rubber Co.*, 738 F2d 1496, 1502-1503, *supra).* That being the case, plaintiffs' common-law claims for breach of contract (the first and third causes of action) must be dismissed as preempted by ERISA *(see,* 29 USC § 1144 [a]). The claims sounding in negligence and breach of fiduciary duty, however, are governed by State law, for they refer, on their face, only to events occurring between 1965 and 1974.

■ Defendant's motion was not directed solely to the preemption issue, but also sought to dismiss the ERISA claim on the merits. Although the parties vigorously disagree with respect to the standard to be employed to review the trustees' determination, we need not confront this issue, for a reversal is mandated even under the more strict "arbitrary and capricious" standard. Defendant is correct in noting that it is the 1986 plan which determines the amount of the pension to which Greco is entitled *(see, Govoni v Bricklayers, Masons & Plasterers Intl. Union of Am., Local No. 5 Pension Fund,* 573 F Supp 82, 85, *affd* 732 F2d 250); the terms of that plan are not wholly determinative, however, for, as previously noted, they provide that an employee is not entitled to recapture credits that have previously been lost, due to a break in service, under the terms of a prior plan. Thus, if Greco was not vested as of June 1974, then he clearly would have suffered a break in service under the plan then in effect, and consequently forfeited his prior credits, on September 30, 1976.

However, a plain reading of the plan as it stood in 1974 discloses that both "base credits" and "bonus credits" were considered "credited service" at that time, and that a participant became vested after accumulating the requisite amount of "credited service". Although the parties dispute the actual amount of credits Greco earned prior to 1974, thus raising a question of fact with regard to the exact amount of his monthly benefit, defendant admits that he accrued eight base credits and 2¼ bonus credits between 1965 and 1974. Inasmuch as the plan made no distinction between "base" and "bonus" credit for vesting purposes at that time, Greco is entirely correct in his contention that, as of June 8, 1974, he had accumulated the required 10 years of post-1965 "credited service" necessary to qualify for a deferred vested pension.

Not until the 1975 amendment was adopted, in December of that year, did the plan differentiate between "base" and "bonus" credits, and eliminate the latter from consideration

for vesting purposes; defendant's suggestion that this amendment was simply a "clarification" of the plan is unconvincing. This "interpretation" is, in reality, an attempt to retroactively apply that amendment to Greco, who had already become vested under the unambiguous terms of the plan in effect in 1974.

In determining whether the retroactive application of a change in the eligibility rules is arbitrary and capricious in a particular case, it is necessary to consider the fundamental fairness of such application, with particular concern being directed to whether the participant was informed of the change and afforded a sufficient opportunity to act to preserve his or her benefits *(see, Agro v Joint Plumbing Indus. Bd.,* 623 F2d 207, 211; *Burroughs v Board of Trustees of Pension Trust Fund for Operating Engrs.,* 542 F2d 1128, 1131, *cert denied* 429 US 1096; *Kosty v Lewis,* 319 F2d 744, 748-749, *cert denied* 375 US 964). There is no evidence that Greco was, at any time, provided an opportunity, after being informed of the change in the rules and the effect it would have on his vested status, to avoid that effect. In these circumstances, the trustees' decision to apply the 1975 amendment retroactively is unjust and, therefore, arbitrary and capricious.

Mikoll, J. P., Crew III, White and Peters, JJ., concur.

Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied defendant's motion regarding the first and third causes of action in the complaint; motion granted to that extent and summary judgment dismissing said causes of action is awarded to defendant; and, as so modified, affirmed.