Peter J. ROCHFORD, Carmen DeSanto, Andrew Gretchokoff, and Ralph Elliot, individually and on behalf of all others similarly situated, Plaintiffs,

v.

William D. JOYCE, John D. Kelahan, Frank Wsol, Robert J. Baker, John J. Barranco, Michael P. Murphy, International Brotherhood of Teamsters Local 710 Pension Fund, Defendants.

No. 88 C 7776.

United States District Court, N.D. Illinois, E.D.

Nov. 16, 1990.

Lawrence Walner, Lawrence Walner & Associates, Ltd., Chicago, Ill., Alan M. Levy, O'Neil, Cannon & Hollman, Milwaukee, Wis., for plaintiffs.

Marvin Gittler, Steven Jay Feinberg, Asher, Gittler, Greenfield, Cohen & D'Alba, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiffs Peter J. Rochford, Carmen De-Santo, Andrew Gretchkoff [1] and Ralph Elliot, file this action individually and on behalf of a class of plaintiffs who were denied pension benefits by defendants allegedly due to various restrictive vesting requirements. These restrictive practices include a requirement to accumulate twenty years of covered employment; the requirement to attain a certain age when a worker attains twenty years of covered employment; not allowing or only allowing limited break-in-service periods; and not allowing workers with break-in-service periods to self-pay. In their three-count complaint plaintiffs allege that defendants, the Inter-

---

1. In various documents both parties alternatively refer to this plaintiff as Andrew Gretchkoff or Andrew Gretchkoff. We use the spelling "Gretchkoff" throughout this order.

national Brotherhood of Teamsters Local 710 Pension Fund ("the Fund") and its trustees, breached their fiduciary duties under § 404(a)(1) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1104(a)(1), by establishing, maintaining and administering the Fund to the detriment of the plaintiffs; breached their fiduciary duties under § 302(c)(5) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5), by failing to maintain the Fund for the sole and exclusive benefit of the employees; and committed common law fraud by making misstatements and omissions of material facts relating to the employees' interest in the Fund. Defendants now move for summary judgment against plaintiffs DeSanto, Rockford and Gretchokoff, individually, based on a multitude of defenses, including nonjusticiability of the claims; non-application of ERISA to pre-ERISA plans; non-applicability of the LMRA; failure to exhaust administrative remedies under ERISA and the LMRA; failure to plead fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure; preemption of common law fraud by ERISA; and bars by the applicable statutes of limitations.

## FACTS

Plaintiff Rochford was a dockman and accumulated twenty years of Local 710 covered service between 1953 and 1973. In April 1973 Rochford was fired from his job due to excessive absenteeism. At that time he had not attained the age of 50. Rochford did not work thereafter in Local 710 covered employment. In 1976 Mr. Rochford applied for a deferred pension but the Fund rejected his application because he was not in covered employment after August 1, 1973.[2] In 1985 Rochford again applied for a pension—this time an early retirement pension. On September 10, 1985, the Fund once again rejected his application, although Rochford had accumulated twenty years of covered service. Ac-

cording to the trustees, Rochford was required to complete thirty years of covered service or be 50 years old at the time he completed twenty years of service to be eligible for an early retirement pension. Rochford took no further action to appeal the Fund's denial of either pension.

Plaintiff DeSanto accumulated 19 years and eight months of covered employment and voluntarily left covered service in 1970, at the age of 41. In 1973 or 1975, DeSanto contacted an unidentified employee of the "Federal Labor Board" about his lack of a pension and allegedly was told that the agency could do nothing because DeSanto had no vested rights. He never filed an application for any kind of pension with the Fund and never asked to make self-payments to ensure 20 years of covered service.

Plaintiff Gretchokoff worked in covered employment for 18 years and was laid off in 1980 at age 53 due to termination of his employer's business. He subsequently became disabled, allegedly due to a prior on-the-job injury, and was unable to obtain covered employment. Gretchokoff now suffers from diabetes mellitus, is partially paralyzed, has had his legs amputated, and is not mentally competent. He applied for a disability pension in September 1981. The Fund denied his application in November 1981 because he was not in covered service at the time he became totally and permanently disabled. He appealed the denial and exhausted his administrative remedies, but the trustees denied his appeal on March 1, 1982.[3] Due to his medical condition, Gretchokoff did not appear for a deposition.

## DISCUSSION

### I. *Standard of Review*

Courts grant summary judgment where "there is no genuine issue as to any material fact and where the moving party is enti-

---

**2.** Had Rochford been employed in Local 710 service after August 1, 1973, he would have been eligible for a deferred retirement pension of $250 per month at age 65. *See* Letter of Denial of Deferred Pension, dated March 19, 1976. There is nothing in the record to indicate if a

deferred pension was authorized prior to August 1, 1973, and if so, under what conditions.

**3.** At age 65, Gretchokoff will receive a regular pension of $243.66 per month. Payment of this pension is not at issue in this case.

tled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). We resolve ambiguities against the movant and draw all reasonable inferences in favor of the non-movant. *Roman v. United States Postal Service*, 821 F.2d 382, 385 (7th Cir.1987). However, the non-movant may not rest on denials; that party must set forth specific facts showing that there is a genuine issue of material fact. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

One issue on this motion is whether plaintiffs' claims are barred by the applicable statutes of limitations. Determining the date on which the plaintiffs knew or had reason to know of defendants' alleged wrongdoing generally is a question of fact which should not be decided prior to trial. *Walker v. Aetna Life Insurance Co.*, 1988 Fed.Sec.L.Rep. (CCH) ¶ 93,955, at 90,430, 1988 WL 46635 (N.D.Ill.1988). However, summary judgment may be available on this issue based on the record before the court. *Id.* at 90,430.

## II. *Justiciability of DeSanto's Claims*

█ Before we discuss the substance of this complaint we must determine whether we have the power to hear DeSanto's claims. Our task is made that much harder due to DeSanto's failure to respond to this issue, which was raised by defendants. Nevertheless, this court must address the issue of justiciability.

The record clearly shows that DeSanto never applied for a pension (DeSanto dep. at 6–7). Thus he has never been denied a pension. Nor is there any evidence that he ever contacted the Fund. We previously stated that

> an employee normally has no real dispute with a pension fund until the application of its requirements to his personal circumstances causes him injury or he is immediately threatened with such injury.

*Daniel v. Peick*, 2 Employee Benefits Cas. (BNA) 2303, 2310 (N.D.Ill.1981) (citing *Lugo v. Employees Retirement Fund of the Illumination Products Industry*, 529

F.2d 251, (2nd Cir.) *cert. denied*, 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976)). We believe that the reasoning in *Daniel* applies to DeSanto as well. There is no evidence of injury or threat of injury at this time. It would be speculative for this court to predict what the trustees might do when DeSanto finally applies for benefits. *See Stewart v. M.M. & P. Pension Plan*, 608 F.2d 776, 785 (9th Cir.1979). Consequently, we do not believe that DeSanto's claims are ripe for adjudication and dismiss him as a named plaintiff.

## III. *ERISA Claims*

Plaintiffs allege that defendants breached their fiduciary duties under ERISA by establishing, maintaining and administering the Fund to the detriment of plaintiffs. Defendants argue that ERISA does not apply to Rochford's claim because all of Rochford's covered service occurred prior to the effective date of ERISA (January 1, 1975).[4] *See* 29 U.S.C. § 1144(b)(1). However, Rochford applied for benefits in 1976 and again in 1985, after ERISA became effective. He appears to argue, although not directly addressing the issue or defendants' case law citations, that the post-ERISA act of denying the pension is sufficient to invoke ERISA.

Congress, in ERISA, provided that pre-emption of state law under § 1144(a) "shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975." 29 U.S.C. § 1144(b)(1). The courts have consistently recognized that the cause of action arises when a pension is denied. They have disagreed over whether or not the act of denial is itself, if occurring after January 1, 1975, an act or omission conferring jurisdiction even though the denial is based upon pre-ERISA events. Some courts have concluded that Congress did not mean to confer jurisdiction upon the federal courts to determine matters controlled by state law. If the post-ERISA denial is but the inexorable consequence of pre-ERISA events subject matter jurisdiction is lacking. *See LaMontagne v. United Wire Metal & Machine Pension Fund*, 869

---

**4.** Portions of Gretchokoff's employment occurred after the effective date of ERISA and

defendants do not dispute ERISA's application to Gretchokoff.

F.2d 153, 156 (2d Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 72, 107 L.Ed.2d 39 (1989); *Menhorn v. Firestone Tire & Rubber Co.,* 738 F.2d 1496, 1501–02 (9th Cir. 1984); *Quinn v. Country Club Soda Co.,* 639 F.2d 838, 841 (1st Cir.1981). Others have taken a contrary view, believing that the post-ERISA denial confers jurisdiction even though state law will largely or entirely control the result. *Rodriguez v. MEBA Pension Trust,* 872 F.2d 69, 72 (4th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 202, 107 L.Ed.2d 155 (1989); *Tanzillo v. Local Union 617,* 769 F.2d 140, 144 (3d Cir.1985).

The issue is complicated by the multitude of possible factual variations. A denial may be based upon a post-ERISA enforcement of a pre-ERISA restriction which ERISA mandates cannot be enforced. *Winer v. Edison Bros. Stores Pension Plan,* 593 F.2d 307 (8th Cir.1979). A post-ERISA denial may largely depend upon pre-ERISA acts and omissions but not be an inexorable consequence of those acts or omissions because the post-ERISA plan grants the trustee a measure of discretion or may require some interpretation because of its continuing relationship to the earlier plan. The Third Circuit so recognized in *Tanzillo,* 769 F.2d at 144 & n. 5, although it adopted a brightline standard.

The law in this circuit looks, to some extent, in both directions. *Reiherzer v. Shannon,* 581 F.2d 1266 (7th Cir.1978) asserted jurisdiction over a claim by a prior plan participant who had left covered employment, due to total disability, in 1968, but it never referred to § 1144(a). In *Coward v. Colgate–Palmolive Co.,* 686 F.2d 1230 (7th Cir.1982), *cert. denied,* 460 U.S. 1070, 103 S.Ct. 1526, 75 L.Ed.2d 948 (1983), the plaintiffs were of two groups. Some had wholly withdrawn from the plan prior to 1968. Others had been on extended layoffs, had received notices of discontinuance due to their loss of status as participants because of their extended layoffs as provided in the plan, and had opted to receive the amount of their contributions

rather than annuities based on contributions. All that was, apparently, pre-ERISA. They claimed that subsequent amendments to the plan, in 1977, entitled them to restoration of the lost credits. The court rejected the claim on the merits, but it did conclude that § 1144 provided jurisdiction to entertain the claims of the second group, but not the first group. The court did not cite *Reiherzer v. Shannon, supra.*

■ In this case Rochford left covered employment in 1973. He does not claim benefits based upon some post-ERISA amendments. His denial followed the ERISA effective date, but we understand *Coward v. Colgate–Palmolive Co., supra,* to mean that some act or omission other than the denial itself, such as an amendment upon which the claimant relies, even if vainly, must occur after January 1, 1975. We conclude that Rochford has not stated an ERISA claim.

That leaves, however, the ERISA claim by Gretchokoff and LMRA claims by Gretchokoff and Rochford.

## IV. *LMRA Claims*

Although it is not clear that plaintiffs' suit alleging violation of § 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5), is actionable after the Supreme Court decision in *United Mine Workers of America Health and Retirement Funds v. Robinson,* 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982), defendants assume such a claim is actionable for the purposes of this motion.[5] They contend that those claims are barred by the applicable statute of limitations and by Rochford's failure to exhaust his administrative remedies.

### A. Statute of Limitations

The parties agree that the three/six-year ERISA statute of limitations is applicable to plaintiffs' § 302 LMRA claim for breach of fiduciary duty. *See Kwak v. Joyce,* 683 F.Supp. 1546, 1550 (N.D.Ill.1988). Section 413 of ERISA, 29 U.S.C. § 1113, explicitly provides for a three/six-year statute of limitations for breach of fiduciary duty.[6]

---

5. The *United Mine Workers* Court stated that § 302 does not include a statutory requirement of reasonableness for eligibility rules for trust funds established through collective bargaining

agreements. *United Mine Workers,* 455 U.S. at 574–75, 102 S.Ct. at 1233–34.

6. Section 412 of ERISA states:

*United Independent Flight Officers, Inc. v. United Air Lines, Inc.,* 756 F.2d 1262, 1271 n. 12 (7th Cir.1985); *Walker,* 1988 Fed.Sec.L.Rep. at 90,430.

Absent tolling, Rochford's 1976 claim for a deferred pension, and Gretchokoff's 1981 claim for a disability pension would be barred.[7] This action was filed on September 9, 1988. The Fund denied Rochford's pension claim on March 19, 1976, more than 12 years prior to the filing of this complaint. Similarly, the trustees denied Gretchokoff's claim for a disability pension on November 6, 1981, and his appeal was denied on March 1, 1982, more than six years prior to the filing of this action.

Plaintiffs, however, argue that the limitations period was tolled because this complaint was filed during the pendency of a purported class action suit, *Dutchak v. International Brotherhood of Teamsters,* No. 76 C 3803 (N.D.Ill. filed October 13, 1976). If plaintiffs' contention is correct, their complaint would not be time-barred.

This tolling doctrine, applicable to previous class action suits, was developed in *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), and extended in *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 354, 103 S.Ct. 2392, 2397, 76 L.Ed.2d 628 (1983). The rule in *American Pipe* is that the limitations period is suspended by the filing of a class action suit for all potential class members who would have been parties had the class been certified. *American Pipe,* 414 U.S. at 554, 94 S.Ct. at 766.

■ As a preliminary matter, we dispose of defendants' argument that *American*

*Pipe* does not apply because plaintiffs filed suit prior to the denial of class certification in *Dutchak. See Glater v. Eli Lilly & Co.,* 712 F.2d 735, 739 (1st Cir.1983). However, the Supreme Court has stated that

> [o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied.

*Crown,* 462 U.S. at 354, 103 S.Ct. at 2397. Defendants are correct that the application of the *American Pipe* tolling rule to actions filed prior to the denial of class certification could create a multiplicity of suits which *American Pipe* sought to avoid. *American Pipe,* 414 U.S. at 551, 94 S.Ct. at 765. However, we believe the Court's directive is clear: the limitations period remains tolled until class certification is denied.[8] We thus respectfully disagree with the *Glater* court and hold that the *American Pipe* tolling rule applies in the instant case.

■ However, this tolling doctrine has its limits. The statute of limitations will not be tolled for plaintiffs having "different or peripheral" claims from those in the original class action suit. *See Crown, Cork & Seal,* 462 U.S. at 354, 103 S.Ct. at 2398 (Powell, J., concurring). To ensure fairness, the later action must be similar enough to the earlier action so that the defendants are notified of the substantive claims against them, as well as the number and generic identifies of the potential plaintiffs. *See American Pipe,* 414 U.S. at 555, 94 S.Ct. at 767; *Davis v. Bethlehem Steel Corp.,* 769 F.2d 210, 212 (4th Cir.), *cert. denied,* 474 U.S. 1021, 106 S.Ct. 573, 88

---

(a) No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date (A) on which the plaintiff had actual knowledge of the breach or violation, or (B) on which a report from which he could reasonably be expected to have obtained knowledge of such breach or violation was filed with the Secretary under this title;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113 (1982).

7. There would be no difference in result whether we apply the three-year or the six-year limitations period. Thus we need not decide which of these time limits is applicable to this case.

8. If defendants desired to avoid multiple suits while *Dutchak* was pending, they could have moved for consolidation. *See Crown, Cork & Seal,* 462 U.S. at 353, 103 S.Ct. at 2397.

L.Ed.2d 557 (1985). Consequently, we must inquire whether Rochford's or Gretchokoff's claims "concern the same evidence, memories and witnesses" as the subject matter of *Dutchak*. *See American Pipe*, 414 U.S. at 562, 94 S.Ct. at 770 (Blackmun, J., concurring). We look to the *Dutchak* complaint to determine if the defendants received sufficient notice to toll the statute of limitations. *Davis*, 769 F.2d at 212.

### 1. *Dutchak Complaint*

On October 13, 1976, David Dutchak and ten other plaintiffs filed an eight-count complaint against various defendants, including the defendants in this suit or their predecessors. Counts I and II of the *Dutchak* complaint alleged violations of security laws. Count III alleged that the *Dutchak* defendants breached their duty of fair representation, and in count IV the plaintiffs contended that defendants violated § 302(c)(5) of the LMRA, 28 U.S.C. § 186(c)(5), by not operating the Fund "for the sole and exclusive benefit of the employees." In count V, the *Dutchak* plaintiffs alleged common law fraud, and in count VI they claimed that the defendants breached their common law fiduciary duty to the plaintiffs.[9] No Local 710 class was ever certified and *Dutchak* was dismissed in April 1989.

Before looking at the details of the *Dutchak* complaint, we consider defendants' argument that the *American Pipe* tolling does not apply because *Dutchak* contained no ERISA counts against Local 710. However, there is no need for the suits to be identical. *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1489 (9th Cir.1985); *Sinclair Oil Corp. v. Atlantic Richfield Co.*, 720 F.Supp. 894, 913 n. 50 (D.Utah 1989). Consequently, we delve into *Dutchak* to determine whether plaintiffs there attacked the practices of which plaintiffs here complain and which, if changed, would give them relief.

Unfortunately, plaintiffs do not point out where in the 88–page *Dutchak* complaint we can find the appropriate notice to the present defendants to toll the statute of limitations.[10] Given the scope of the *Dutchak* claims, one could argue that the defendants were on notice that the whole plan was fair game. However, "generalized allegations" provide insufficient notice to the defendants. *See Davis*, 769 F.2d at 212. Consequently, we look at the factual circumstances relating to the *Dutchak* plaintiffs with Local 710 employment. Were there named plaintiffs in *Dutchak* with circumstances similar to Gretchokoff's and Rochford's, seeking similar relief?

Gretchokoff's claim was not advanced in *Dutchak*. His rights in a disability pension vested after 15 years and he was employed in covered employment for 18 years. He had no break in service. His disability pension was denied solely because he had left covered employment before he became disabled, and that requirement was not addressed in *Dutchak*. His claims were not tolled and they are dismissed.

Rochford attacks the requirement that 20 years was insufficient for a pension if the participant left covered employment prior to attaining the age of 50. Paragraph 22 of the *Dutchak* complaint comes the closest to Rochford's situation, but there the claim was that 20 years was too long. But Rochford fulfilled his 20 years, so he cannot be complaining about that. It is the age 50 requirement which has led to the denial of his pension. To the extent that Rochford attacks the Fund's denial of a deferred pension because he had not reached 50 upon leaving covered service, we find such a claim untimely. No claim to a deferred pension was mentioned in *Dutchak* nor did any Local 710 plaintiffs contend that the age 50 requirement caused them to be denied a pension. Defendants

---

**9.** Counts VII and VIII did not involve Local 710 as a defendant. Although the *Dutchak* plaintiffs attempted to amend the complaint on June 27, 1978 to include ERISA counts, Local 710 was not named as a defendant for those counts either.

**10.** Although the *Dutchak* complaint cites Local 705 in the text as violating plaintiffs' rights, those plaintiffs earlier stated that references to Local 705 should be interpreted to be both Local 705 and Local 710 (*Dutchak* complaint, ¶ 9).

could not have notice of such a claim from the *Dutchak* complaint.

■ However, Rochford also is attacking the Fund's denial of an early retirement pension. The Fund rejected Rochford's application on September 10, 1985, less than three years prior to the filing of this complaint. Consequently, Rochford's LMRA claim based on denial of an early retirement pension is timely.

Defendants argue that the Fund's denial of Rochford's 1985 application was a later act simply denying the same benefits which would not restart the limitations period. *Cf. Coward*, 686 F.2d at 1234 (later acts of denying benefits not a continuing violation). However, we believe that the 1985 claim for an early retirement pension appears to be different from the earlier claim for a deferred pension. At the very least there is a genuine issue of fact as to whether the claims are the same, making summary judgment inappropriate.

### B. Exhaustion of Administrative Remedies

■ The parties assume that the same rule that applies to exhaustion of administrative remedies for ERISA breach of fiduciary duty claims should apply to LMRA structural defect claims. Congress incorporated a great deal of LMRA fiduciary law into ERISA. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 108–09, 109 S.Ct. 948, 953, 103 L.Ed.2d 80 (1989), and thus we agree that the same standard should apply to this case. Following another standard would allow form to prevail over substance, where a different result might follow just by the label the plaintiff gave to a claim.

Defendants have argued that Rochford's ERISA claim should be dismissed because he did not appeal the Fund's denials of his applications for pension and thus he did not exhaust his administrative remedies. As the parties note, the courts of appeals are divided on whether district courts must require exhaustion of administrative remedies in an ERISA case. *See Mason v. Continental Group, Inc.*, 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986) (White, J., dissenting from denial of *certiorari*).

However, the Seventh Circuit has "committed to the sound discretion of the district court" the question of whether to require ERISA claimants to first exhaust their administrative remedies. *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 466 (7th Cir. 1986), *cert. denied*, 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987).

While defendants are correct in noting that our court of appeals has required exhaustion in recent cases, *see id.* at 466–67; *Kross v. Western Electric Co.*, 701 F.2d 1238, 1244–45 (7th Cir.1983), these cases involve plaintiffs suing for violation of ERISA § 510, 29 U.S.C. § 1140. That court has not decided whether exhaustion is required where a plaintiff sues for breach of fiduciary duty. *See Lindahl v. American Telephone and Telegraph Co.*, 609 F.Supp. 267, 270 (N.D.Ill.1985). In fact, the Seventh Circuit recently questioned, albeit in *dicta*, whether exhaustion is appropriate in cases of breach of fiduciary duty and opined that the court might have "to revisit *Dale* eventually." *Mortell v. Mortell Co.*, 887 F.2d 1322, 1326 (7th Cir.1989). Furthermore, there is precedent in this district for not requiring exhaustion for a breach of fiduciary duty claim. *See Bartz v. Carter*, 709 F.Supp. 827, 828 (N.D. Ill.1989); *Lindahl*, 609 F.Supp. at 272–73; *Kross v. Western Electric Co.*, 534 F.Supp. 251, 253 (N.D.Ill.1982) (*dicta*), *aff'd in part, rev'd in part*, 701 F.2d 1238 (7th Cir.1983), and we have so held. *Benkiel v. Rozencwajg*, No. 83 C 444, slip op. at 3, 1984 WL 1232 (N.D.Ill. Oct. 1, 1984).

■ Neither party attempts to draw a distinction between an ERISA action for breach of fiduciary duty, as opposed to other violations of ERISA. Their briefs and case citations only confirm that the appellate courts are divided on the issue of exhaustion. Especially after *Mortell*, we see no reason to depart from our holding in *Benkiel*, and in our discretion we will not require Rochford to exhaust his administrative remedies in this case.

We also find support for not requiring exhaustion of remedies in *Fujikawa v. Gushiken*, 823 F.2d 1341 (9th Cir.1987), *cert. denied*, 487 U.S. 1240, 108 S.Ct. 2913,

101 L.Ed.2d 945 (1988). In *Fujikawa* the Ninth Circuit turned aside an argument by pension plan fiduciaries that a court could require exhaustion under § 302(c)(5) of the LMRA, where no such exhaustion was required under ERISA. The court clearly held that the LMRA did not require exhaustion where the fiduciaries allegedly violated the provisions of that statute, and that such a rule would apply whether the administrative procedures were contractually required or required by the LMRA. *Id.* at 1345. We agree with the analysis in *Fujikawa* and do not believe that, under the facts of this case Rochford should be required to exhaust his administrative remedies prior to filing suit, for violation of the LMRA.

### V. *Common Law Fraud*

Because Rochford has no ERISA claim, the claims he does have are not preempted by ERISA. Defendants contend, however, that he has no common law claim because it is not pleaded with sufficient particularity and because it is barred by limitations.[11]

We do not reach the limitations issue because we agree that Rochford's fraud claim has not been pleaded with sufficient particularity and, accordingly, we dismiss it. Indeed, the complaint suggests that the 50 years of age requirement was an integral part of the plan, which Rochford considers arbitrary and unreasonable. The complaint nowhere indicates that he was ever told anything to the contrary or, if he was, what that might have been and whether he relied upon it to his detriment. Count III is a generalized claim of wholesale misrepresentations and omissions over an extended period with, presumably, what that all means to come later. Rule 9(b) requires far more than that.

### CONCLUSION

For the reasons stated, we dismiss DeSanto's claims in Counts I and II as not yet justiciable, we grant defendants' motion for summary judgment against Gretchokoff as to Counts I and II on limitations grounds, we dismiss DeSanto's and Gret-

chokoff's Count III claims without prejudice, we grant defendants' motion for summary judgment against Rochford with respect to Count I and deny it with respect to Count II, and we dismiss his Count III claims.

---

11. Since Rochford has an LMRA claim, the state law claim is one over which this court would normally exercise pendent jurisdiction. Con-
versely, since DeSanto's and Gretchokoff's federal claims have been dismissed their fraud claims are dismissed without prejudice.