Gary R. MILLER and Jeanne A. Miller Plaintiffs,

v.

MAGNETEK, INC. Defendant.

No. 03–C–0361.

United States District Court, E.D. Wisconsin.

Aug. 27, 2004.

appears to also follow the reasoning behind *Bragdon* in assessing a claim brought under

42 U.S.C. Section 12102(2)(A).

Mark Sostarich, Milwaukee, WI, for Plaintiffs.

James E. Culhane, Denver, CO, Matthew J. Flanary, Milwaukee, WI, for Defendant.

## DECISION AND ORDER

ADELMAN, District Judge.

Plaintiffs Gary R. Miller ("Gary") and Jeanne A. Miller ("Jeanne") brought this action in state court alleging that defendant MagneTek, Inc. ("MagneTek") breached its contractual obligation to them and committed the tort of bad faith when it refused to continue to provide them with health insurance coverage or to pay their medical bills. Defendant removed the case both on diversity of citizenship and federal

question grounds. With respect to diversity, plaintiffs are Wisconsin citizens, and defendant is a Delaware corporation whose principal place of business is California. With respect to federal question jurisdiction, defendant asserted that the purpose of plaintiffs' action was to recover benefits under a plan covered by the Employer's Retirement Security Act ("ERISA") and that the action was therefore removable under the doctrine of complete preemption. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). The judge to whom the case was originally assigned preliminarily enjoined defendant from terminating plaintiffs' insurance coverage. Subsequently, the judge recused himself whereupon the case was randomly reassigned to me. Before me now is defendant's motion to dismiss the complaint or, alternatively, for summary judgment. In their submissions, both parties rely on documents outside the pleadings, thus I will treat defendant's motion as one for summary judgment. *See* Fed.R.Civ.P. 12(b).

## I. FACTS

Gary states that until 1970 he was employed as a maintenance worker for the Louis Allis Corporation ("Louis Allis") in Milwaukee. He states that on February 21, 1970, while he was retooling a press, an accident occurred causing his arms and hands to be crushed. As a result of his injuries, he underwent numerous operations and was permanently disabled.

Gary further states that:

as part of the overall resolution of my claims against the company, including claims unrelated to worker's compensation, Louis Allis agreed on behalf of itself, and for any later successors and assigns, that my family and I would continue to receive health and dental benefits at the level that we received at the time of my accident.[1] The benefits were to terminate only upon the death of my wife and me.

(Second Aff. of Gary R. Miller ¶ 3.) Plaintiffs state that the agreement was reduced to writing but they have been unable to produce a document memorializing it.

Louis Allis provided plaintiffs with health insurance until 1984 when defendant purchased its assets from its parent company, Litton Industries, Inc. ("Litton"), and established the Louis Allis Division of MagneTek. In the asset purchase agreement, defendant assumed no obligation to provide "medical or long term disability benefits to any retired employee," or "to provide medical benefits to any employee . . . for claims incurred by such employee prior to the Transfer Date . . . under Litton's existing employee benefit plans." (Bennett Aff. Ex. 1.) Defendant disclaims any knowledge of the agreement on which plaintiffs rely. Plaintiffs allege that after the asset purchase, defendant's representatives informed them that defendant would provide them with health coverage under "Plan 80," a special MagneTek plan that covered disabled employees. In any case, defendant provided plaintiffs with coverage.

In 1994, MagneTek sold the Louis Allis Division to the Louis Allis Company, which sent Gary a letter stating:

Your workers compensation coverage, as it relates to the February 21, 1970 injury, is the responsibility of Litton Industries, Inc. and Employers Insurance of Wausau. Any questions or concerns

---

**1.** Plaintiffs state that at the time of the accident their policy covered all of their medical bills with a deductible of $100 per year per participant and a maximum deductible of $200 per year per family, and that it also covered prescription drugs and eighty percent of dental bills.

that you have should be directed to Wausau or Litton.

Your group health coverage is the responsibility of MagneTek, Inc. All questions or concerns that you may have related to your group health coverage should be referred to MagneTek, Inc. Any questions regarding your pension benefits with Litton Industries should be directed to Litton Industries.

(Second Miller Aff. Ex. A.) In February 1995, James Horrell, who handled employee benefits for defendant, wrote a letter to defendant's health plan administrator stating that:

[Mr. Miller] was injured in an industrial accident in 1970. As part of the terms of the settlement of his claim Litton Industries (and subsequently Magne-Tek) agreed to provide him with benefits for charges incurred that were not related to his injury.

He was covered by special arrangement with the TPA of Minnesota and by ITT Hartford. He should also be covered by us currently.

(Second Miller Aff. Ex. B.)

Defendant provided plaintiffs with health insurance coverage from 1984 until 2003. However, in 2002, defendant stopped self-insuring and obtained insurance through Blue Cross of California. Soon after, defendant advised plaintiffs that:

[W]e have been unable to locate any document confirming an agreement between MagneTek and Litton regarding medical and dental coverage for you and your wife.... At most, Magnetek may have agreed to temporarily provide non-injury related medical and dental coverage for you and your wife under its group plans.

. . . . .

[E]ffective January 1, 2003, neither you nor your wife will be eligible for coverage under Magnetek's medical and den-

tal plans.... Our contract with Blue Cross does not allow us to provide "special" plans for inactive or former employees.

(Second Miller Aff. Ex. G.)

Plaintiffs then commenced the present action.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, it is "not required to draw every conceivable inference from the record—only those inferences that are reasonable." *Bank Leumi-Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991).

## III. DISCUSSION

Defendant argues that both plaintiffs' breach of contract and bad faith claims are preempted by ERISA and that they also

fail on the merits. I address the preemption issue first.

## A. ERISA Preemption

ERISA's preemption provision provides that with certain exceptions, ERISA "supercede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The exact scope of ERISA preemption is unclear because the critical statutory phrase, "relate to any employee benefit plan," is not self-defining and the Supreme Court " '[has] been at least mildly schizophrenic in mapping its contours.' " *Trs. of AFTRA Health Fund v. Biondi,* 303 F.3d 765, 773 (7th Cir.2002) (quoting *Carpenters Local Union No. 26 v. U.S. Fid. & Guar. Co.,* 215 F.3d 136, 139 (1st Cir.2000)). Further, ERISA does not preempt state laws "with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975." 29 U.S.C. § 1144(b)(1). Plaintiffs do not dispute that their claims depend on state laws that relate to an employee benefit plan or that the alleged 1970 agreement is an employee benefit plan. Further, they concede that their causes of action against defendant for terminating their insurance coverage arose in 2002, well after January 1, 1975. However, plaintiffs argue that their claims are not preempted because the acts underlying them occurred before January 1, 1975.

The law is unclear concerning when an act or omission that occurred prior to January 1, 1975 prevents ERISA from applying to a case. In enacting ERISA, Congress did not answer the question, the Supreme Court has not addressed it, and the circuits are divided on the issue. *See, e.g. Stevens v. Employer–Teamsters Joint Council No. 84 Pension Fund,* 979 F.2d 444, 450–51 (6th Cir.1992); *see generally* Bradley H. Layne, Note, *Post–ERISA Interpretation of Pre–ERISA Pension Plans: Dissension Among the Circuits,* 92 W. Va. L.Rev. 721 (1990). The Third, Fourth, Fifth and Eleventh Circuits agree that a post–1975 denial of benefits triggers ERISA preemption even if all other relevant acts or omissions occurred prior to 1975. *See Stevens,* 979 F.2d at 451 (collecting cases); *Burks v. Am. Cast Iron Pipe Co.,* 212 F.3d 1333, 1336 (11th Cir. 2000). However, the First, Second, Sixth and Ninth Circuits hold that a post–1975 denial of benefits does not trigger preemption if the events underlying the plaintiff's claim occurred before 1975 and the plan was adopted prior thereto. *Stevens,* 979 F.2d at 451–55.[2]

Although not entirely clear, *see Hohenegger v. N. Indiana Pub. Service Co.,* 967 F.Supp. 350, 352 (N.D.Ind.1997); *Rochford v. Joyce,* 755 F.Supp. 1423, 1427 (N.D.Ill. 1990), the Seventh's Circuit's view appears to be consistent with that of the First, Second, Sixth and Ninth Circuits. In *Coward v. Colgate–Palmolive Co.,* 686 F.2d 1230, 1232–34 (7th Cir.1982), the court stated that "[a] party cannot rely on pre-ERISA conduct to escape application

**2.** The Eighth, Tenth and District of Columbia Circuits have either not resolved the issue or cannot be said to hold either view. The Eighth Circuit has held that a post-ERISA denial of benefits is sufficient to trigger ERISA preemption, *Winer v. Edison Bros. Stores Pension Plan,* 593 F.2d 307, 313–14 (8th Cir.1979), but that state law rather than ERISA's substantive provisions should be applied to acts or omissions that occurred prior to 1975, *see Landro v. Glendenning Motorways, Inc.,* 625 F.2d 1344, 1351–52 (8th Cir. 1980), *overruled on other grounds by Martin v. Ark. Blue Cross & Blue Shield,* 299 F.3d 966, 971–72 (8th Cir.2002). The Tenth Circuit has not addressed the issue in a published decision. The District of Columbia Circuit has interpreted only the cause of action prong of § 1444(b)(1) and not the act or omission prong. *N.Y. State Teamsters Conference Pension and Ret. Fund v. Pension Benefit Guar. Corp.,* 591 F.2d 953, 955–58 (D.C.Cir.1979).

of ERISA if the critical acts serving as the basis for the claim occurred after ERISA went into effect." *Id.* at 1233. It added:

"The phrase 'act or omission' has been said to 'refer to those significant facts which give rise to a claim but which fall short of establishing a cause of action,'" *Winer v. Edison Brothers Stores Pension Plan,* 593 F.2d 307, 313 (8th Cir. 1979) .... The clear practical import of the act or omission clause is to prevent past conduct of pension plan fiduciaries and contributors from being judged retroactively under the standards established by ERISA simply because the conduct generates consequences subsequent to the ERISA effective date that give rise to what is, technically, an independent 'cause of action'. *Quinn v. Country Club Soda Co.,* 639 F.2d 838, 840–841 (1st Cir.1981).

*Id.* at 1233 n. 3. As district courts in the Seventh Circuit have noted, *Coward* is not the clearest of opinions. *Hohenegger,* 967 F.Supp. at 352 (stating that "the Seventh Circuit has touched on ... the 'critical acts' concept, but not thoroughly enough to provide an easy answer here"); *Rochford,* 755 F.Supp. at 1427 (noting that Seventh Circuit law "looks, to some extent, in both directions"). However, the prevailing interpretation of *Coward* is that a denial of benefits occurring after January 1, 1975 does not necessarily cause ERISA to apply to a claim if the acts or omissions giving rise to it occurred before January 1, 1975. *See Hohenegger,* 967 F.Supp. at 352; *Rochford,* 755 F.Supp. at 1427.

■ Neither the First, Second, Sixth, Seventh nor Ninth Circuits have adopted a clear test for determining when a pre–1975 act or omission takes a case out of ERISA's ambit. However, a number of cases indicate that as a general principle, parties' conduct should not be judged by legal standards that were not in effect when the conduct occurred. *See Stevens,*

979 F.2d at 452–53; *see also Hohenegger,* 967 F.Supp. at 353 (stating that it would be unfair to use an ERISA ban on oral modifications to contracts to nullify an alleged modification created roughly a decade before ERISA was passed); *see also Landro,* 625 F.2d at 1351–52 (stating that interests of all parties will be most fairly accommodated if ERISA's substantive provisions are not applied to pre-ERISA conduct). This principle is grounded in fundamental considerations of fairness and is further reflected in Congress's intent that ERISA not be retroactively applied. *See Stevens,* 979 F.2d at 452. In view of this principle, I conclude that ERISA should not govern a claim if an act or omission giving rise to it occurred prior to January 1, 1975, and if it would be unfair to apply a substantive provision of ERISA to such act or omission. With this principle in mind, I turn to plaintiffs' breach of contract and bad faith claims.

**1. Breach of Contract Claim**

■ Plaintiffs contend that their breach of contract claim is not governed by ERISA because the critical act underlying it is Louis Allis's 1970 agreement to provide them with insurance coverage and because it would be unfair to require that such agreement be in writing (as ERISA arguably requires) because in 1970 state law did not include such a requirement. Defendant argues that ERISA governs plaintiffs' claim because the critical acts underlying it are the 1984 asset purchase agreement in which it allegedly assumed the 1970 agreement and its 2002 decision to terminate plaintiffs' benefits. I agree with plaintiffs. The formation of the 1970 agreement provides the basis for plaintiffs' claim and thus is the most important act underlying it. Defendant seeks to bring the case within ERISA because under ERISA oral contracts are arguably unenforceable, and plaintiffs have no written

version of the 1970 agreement. However, when plaintiffs entered into the agreement they could not have foreseen that a subsequently enacted federal law would require their agreement to be in writing. Thus, it would be unfair to invalidate the agreement based on ERISA. Rather, the validity of the agreement should be judged under state contract law.

That defendant is not alleged to have assumed the 1970 agreement until 1984 does not change the analysis. This is so because plaintiffs could not have insisted that defendant's assumption of the agreement be in writing because they were not a party to such assumption. Further, the fact that defendant did not terminate plaintiffs' benefits until 2002 is not a sufficiently important act to trigger ERISA coverage because, under plaintiffs' breach of contract theory, whether defendant could terminate plaintiffs' benefits depends on the pre-ERISA 1970 agreement. Thus, to apply ERISA to plaintiffs' breach of contract claim would be to apply it retroactively. Therefore, plaintiffs' breach of contract claim is governed by state law rather than ERISA.[3]

### 2. Bad Faith Claim

 With respect to plaintiffs' bad faith claim, however, I conclude that the critical acts underlying the claim occurred after January 1, 1975 and that, therefore, such claim is preempted by ERISA. To establish a bad faith claim under Wisconsin law, a plaintiff must show: (1) that an insurance contract existed; (2) that the insured presented a claim; (3) that the claim was denied (4) without a reasonable basis; and (5) that the insurer knew of or recklessly disregarded the fact that there was no reasonable basis for denying coverage. *See Anderson v. Cont'l Ins. Co.*, 85 Wis.2d 675, 691–93, 271 N.W.2d 368 (1978). The acts or omissions underlying plaintiffs' claim involve the reasonableness of defendant's refusal to pay certain of plaintiffs' medical bills, which refusal occurred in 2003. Thus, it is proper to apply ERISA to plaintiffs' claim, and doing so does not result in a retroactive application of ERISA's substantive principles. Accordingly, plaintiffs' insurance bad faith claim is preempted and will be dismissed.[4]

### B. Merits of Breach of Contract Claim

██ I now consider whether plaintiffs have presented sufficient evidence in support of their breach of contract claim to survive defendant's motion for summary judgment. As discussed, plaintiffs allege that in 1970 Louis Allis agreed to provide them with health insurance coverage for life, and that in 1984 defendant assumed such obligation. Defendant first argues

3. I also note that applying state law rather than ERISA to plaintiff's contract claim does not result in an unfair application of state contract law to defendant's decision to terminate plaintiffs' benefits because, since plaintiffs informed defendant that their benefits were controlled by an agreement formed in 1970, defendant was on notice that ERISA might not supply the substantive standards governing plaintiffs' claim.

4. It may appear inconsistent to find that plaintiffs' breach of contract claim is not preempted but that their insurance bad faith claim is, inasmuch as both claims relate to the same employee benefit plan. However,

ERISA creates such inconsistency. Because the statute does not distinguish between benefit plans created before 1975 and those created after 1975, a plan created in 1970 is an ERISA plan. *See* 29 U.S.C. § 1002(1). Further, as discussed, section 1144(b)(1) provides that causes of action arising and acts or omissions occurring before 1975 are not governed by ERISA. Thus, whether § 1144(b)(1) saves a claim from preemption depends on the nature of the *claim*, not on whether the *plan* to which it relates predates ERISA. Therefore, when two claims are brought relating to the same plan, one claim may be preempted and the other not.

that because plaintiffs have not produced a writing proving the existence of the 1970 agreement their breach of contract claim is barred by the statute of frauds. Under the Wisconsin statute of frauds, a contract that cannot be performed within one year must be in writing or is void. Wis. Stat. § 241.02(1)(a). However, if there was any possibility that the contract *could have been* performed within one year, the contract is not within the statute. *See, e.g., Nelsen v. Farmers Mut. Auto. Ins. Co.,* 4 Wis.2d 36, 52, 90 N.W.2d 123 (1958). In the present case, the 1970 agreement—which allegedly obliged Louis Allis to provide plaintiffs with health insurance coverage for life—could have been performed within one year if plaintiffs had died within a year of its formation. Thus, the 1970 agreement is not within the statute of frauds, and plaintiffs' breach of contract claim is not barred because of the absence of a writing.

Secondly, defendant argues that there is insufficient evidence to conclude that as part of the 1984 asset purchase agreement, it assumed the duty to provide plaintiffs with health insurance. It points to language in the agreement excepting it from any obligation:

(I) to provide medical or long term disability benefits to any retired employee of any of the Divisions as of the Transfer Date under Litton's existing employee benefit plans, and (ii) to provide medical benefits to any employee of any of the Divisions as of the Transfer Date for claims incurred by such employee prior to the Transfer Date under Workers Compensation or under Litton's existing employee benefit plans.

(Asset Sales Agreement Ex. D ¶ 6.) Under the above language, defendant was not responsible for paying medical benefits for retired employees or claims incurred by employees prior to the Transfer Date.[5]

However, the above language does not appear to provide defendant with a defense to plaintiffs' claim. First, there is no evidence that at the time of the asset purchase, Gary was a "retired employee." The only evidence in the record on this point is Gary's affidavit stating that he was a "disabled employee." (Miller Aff. ¶ 5.)[6] Second, plaintiffs do not seek reimbursement for "claims incurred" prior to 1984 but rather attempt to establish that defendant must cover claims incurred in 2003 and thereafter. Further, under the asset purchase agreement, defendant assumed all of Louis Allis's liabilities except those expressly excluded. (*See* Asset Sales Agreement § 1.5(b).) Thus, based on the present record, there is a genuine issue of material fact as to whether, pursuant to the 1984 asset purchase agreement, defendant assumed Louis Allis's alleged obligation to plaintiffs under the 1970 agreement.[7]

---

5. The Transfer Date was the date in July 1984 on which the asset purchase was consummated. (*See* Asset Sales Agreement § 2.1.)

6. Specifically, Gary states that "[i]n approximately 1984, a new company, MagneTek, Inc., took over the Louis Allis Corporation's operations in the greater Milwaukee area. I remained a disabled employee of the company, and was told that MagneTek would continue the agreement to provide health and dental insurance along with prescription drug care as agreed to." (Miller Aff. ¶ 5.)

7. In 1994, defendant sold the assets of its Louis Allis division to the Louis Allis Company. There is no evidence in the record that the latter entity assumed the obligations to plaintiffs allegedly established by the 1970 agreement. In any event, "in a sale of assets the seller retains primary responsibility for satisfying all its liabilities, whether or not assumed by the buyer," and "a creditor can still proceed directly against the seller after an asset sale." Byron F. Egan, H. Lawrence Tafe, III, Samuel C. Thompson, Jr., *Asset Acquisitions: A Colloquy,* 10 U. Miami Bus. L.Rev. 145, 153 (2002).

## IV. CONCLUSION

For the reasons stated, plaintiffs' bad faith claim is preempted by ERISA, but their breach of contract claim is not. Further, plaintiffs present sufficient evidence on the breach of contract claim to survive defendant's motion for summary judgment.

**THEREFORE, IT IS ORDERED** that MagneTek's motion to dismiss or, in the alternative, for summary judgment (docket #14) is **GRANTED IN PART AND DENIED IN PART** as described above.

**IT IS FURTHER ORDERED** that a telephonic status conference will be held on **September 3, 2004 at 10:30 a.m.** The court will initiate the call.